FILED

2021 Mar-19  AM 09:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **AMANDA AKE,** | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| **v.** | ) |
| | ) **CIVIL ACTION NO. _____** |
| **LIFE INSURANCE COMPANY OF** | ) |
| **NORTH AMERICA** | ) |
| | ) |
| **DEFENDANT.** | ) |

## COMPLAINT

Plaintiff Amanda Ake ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Life Insurance Company of North America ("Cigna"), a wholly owned subsidiary of Cigna Corporation, in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Southern Management Corporation, a d/b/a for Thaxton Investment Corp. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

1

## INTRODUCTORY STATEMENT

1.      This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA").  This suit is brought pursuant to 29 U.S.C. § 1132(a), in order to secure disability benefits due to Plaintiff through the group insurance policy sponsored by Thaxton Investment Corp.

2.      The Plaintiff seeks the reinstatement and recovery of her long-term disability benefit under the Plan managed, administered or underwritten by CIGNA.

3.      Plaintiff seeks the restoration of these benefits based on the conditions documented in her medical records and other evidence before CIGNA when it denied Plaintiff's appeal by operation of law under Plan terms and Department of Labor Regulations.

4.      These conditions include, among other things, continued severe back pain, numbness and tingling after 2 back surgeries, degenerative disc disease with radiculopathy, fibromyalgia, hypothyroidism, GERD, insomnia, fatigue, vitamin B12 deficiency, obesity, and migraine headaches.

5.      Plaintiff's established functional limitations include, among other things, a significant inability to walk, bend, twist or lift even very light objects and an inability to sustain concentration or perform higher ordered executive functions that depend on memory and attention due to her significant and debilitating pain.

2

## JURISDICTION

6.    Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" as that term is defined within 29 U.S.C. § 1001, et. seq.  The Plan "may be found" within this district.

7.    Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

8.    Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

9.    Plaintiff Amanda Ake is resident of Alabama and as a participant in the Plan is eligible for benefits provided thereunder.

10.    Defendant Life Insurance Company of North America ("Cigna") is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

11.    CIGNA is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

3

12.    One of Cigna's designated agents for service of process is:

> CT Corporation System
> 2 North Jackson Street
> Suite 605
> Montgomery, AL 36104

13.    Cigna is an entity exercising authority or control respecting the management or disposition of The Plan assets or the personnel exercising said authority over The Plan assets.

14.    Cigna is an entity providing services to The Plan at issue.

15.    Cigna is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

16.    Upon information and belief, The Plan's disability benefit at issue was funded, at least in part, by a group insurance policy sold by Cigna, the company which also underwrote the policy.

17.    This policy was purchased by Plaintiff's employer to confer a benefit upon Plaintiff and other employees.

18.    As a result, these policies qualify as employee welfare benefit plans as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under The Plans as that term is used in 29 U.S.C. § 1132.

19.    For Plaintiff who Cigna previously found to be disabled and qualified for benefits for 2 years before her termination, the following definition of

4

"disability/disabled" applies:

> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1.    unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2.    unable to earn 60% or more of his or her Indexed Earnings.

20.    Under the terms of The Plan providing for these disability benefits, Plaintiff is "disabled."

21.    There are no Plan documents indicating that CIGNA has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred.

## CIGNA'S LIABILITY

22.    Plaintiff's medical records are extensive.  Her diagnoses include continued severe back pain, numbness and tingling after 2 back surgeries, degenerative disc disease with radiculopathy, fibromyalgia, hypothyroidism, GERD, insomnia, fatigue, vitamin B12 deficiency, obesity, and migraine headaches.

23.    Her many medications she takes include gabapentin and cyclobenzaprine.

34.    In a statement provided to Cigna, Plaintiff described with particularity the degree of her day-to-day struggle because of her pain and other consequences of her physical conditions.

35.    In March 2018, Plaintiff, who had been working at the time as an

assistant branch manager for Southern Management Corp. (a payday lending/check cashing business), applied for short-term disability benefits under the Thaxton Investment Corp. plan.

36.   Her inability to continue working began with back surgeries in March 2018.

37.   After being awarded and receiving that benefit in full, her claim transitioned into long term disability benefits as of September 1, 2018 when complications from those surgeries arose and further deterioration of her overall condition persisted.

38.   Cigna thereafter approved her LTD claim finding her to be unable to perform the material duties of her Assistant Manager occupation as of September 1, 2018 on January 4, 2019 and paid back-benefits then due to her.

39.   Eight months later, in a letter dated August 20, 2019, Cigna suddenly informed it was terminating and closing that same claim effective that on the date because its claims team at that time found Plaintiff miraculously not to have *any* restrictions and limitations *at all* (in other words, totally recovered) and to be capable of returning to work fulltime.

40.   To reach that conclusion, that claims group and its medical reviewer put to the side Plaintiff's physician statements and records showing her to have multiple significant physical limitations, including a serious and painful back

condition that prevents her from remaining in a seated position for more than 15 minutes at a time without the need for reclined rest at regular intervals. Instead, they relied on Cigna's own medical reviewer who had not able to assess Plaintiff in person like her treating physicians had.

41.     To address this deficiency in Cigna's review, Plaintiff submitted to an in-person Independent Medical Exam.

42.     This IME confirmed Plaintiff as continuing to have significant functional limitations that not only prevented her from returning to her old occupation, but which prevented her from working fulltime in *any capacity*.

43.     Plaintiff submitted this IME result, together with other medical and vocational evidence, to CIGNA in that appeal on February 4, 2020.

44.     In a letter dated April 3, 2020, CIGNA agreed to overturn that decision and promptly reassigned the claim to a new claims group.

45.     On or about May 15, 2020, the new claims team that had then been reassigned to the administration of Plaintiff's LTD benefit commenced a new review almost immediately after the claim's re-approval on appeal.

46.     This review ostensibly was to consider whether Plaintiff would continue to qualify for LTD as of September 1, 2020, at which point her disability definition under the policy became an "any occupation" standard (the standard quoted above in this Complaint in Plaintiff's description of the policy).

47.     During that process, Plaintiff provided CIGNA with updated information about her medical providers, much of which consisted of cancelled or postponed appointments due to state-wide stay-at-home orders resulting from the then-new Covid-19 pandemic.

48.     Then, on September 14, 2020, Plaintiff, through her counsel, received a fax from someone named "Cecilia" who identified herself as being a "Nurse Case Manager" for CIGNA.

49.     This fax asked Plaintiff to obtain responses to obtain clarification (and to return a medical authorization) as to five items, stated as follows:

(1) the current clinical exam findings as above office visit mainly notes customer appears oriented on exam. Are there any additional clinical exam findings?

(2) Has any recent surgery been performed?

(3) Can customer can return to work?

(4) If customer can return to work, are there any work restrictions and/or functionalities (see attached form)?

(5) If restrictions are noted, what are the clinical rationale why stated restrictions should be supported?

50.     No deadline was provided for a response, nor was any indication given that the information requested was best received by a certain future date.

51.     Counsel acknowledged the letter and affirmed for "Cecilia" on September 21, 2020 that a response was being provided to her "as soon as possible."

34.     Despite having been told that the information it has specifically

requested was soon to be provided, "Cecilia" and the claims team to which she was assigned moved forward anyway without it. What once appeared important to Cigna now was not and Cigna terminated the claim pursuant to its letter dated October 1, 2020.

35.    Soon after receiving this October 1, 2020 LTD benefit termination letter, Plaintiff, through counsel, requested all "relevant" documents relating to this latest termination and closure of her claim under Plan terms and Department of Labor regulations.

52.    Cigna, however, failed at first to provide a complete response, and provided instead documents that, although nominally identified by Cigna as being its "record," did not include any of the reviews it had cited performed leading up to that decision.

53.    When Plaintiff eventually did get sent the rest of this information, the updated claim file showed that Cigna used the lack of this information that it had identified before through "Cecilia" as being important to support its recent October 1, 2020 termination.

54.    Around this same time, Cigna, after pulling this rug out from under Plaintiff in its claims administration, demanded that Plaintiff (having since been awarded Social Security Disability) reimburse it for the amount she has received as a result of a Social Security Disability determination whose substance it wholly

refuses to consider or credit.

55.    Plaintiff, through counsel, appealed this abusive and abrupt second termination of her LTD claim on January 29, 2021 in a length letter sent via facsimile that afternoon.

56.    The facsimile transmission report from that fax confirms Cigna received the transmission successfully that same date.

57.    Pursuant to Plan terms and Department of Labor regulations, Cigna's deadline for issuing an appeal decision was 45 days from January 29, 2021, or in other words, March 15, 2021.

58.    Along with the faxed copy of the appeal letter, Plaintiff Counsel also by way of certified mail sent a copy identical in every way to the faxed version which accompanied a CD that included the following items   (each of which Plaintiff Counsel's appeal letter specifically identified to confirm its inclusion in what Cigna would be receiving):

(a)    September 29, 2020 Responses to Cigna Nurse Case Manager questions about Plaintiff's conditions and assessments;

(b)    Cigna's supplemental response to Plaintiff ERISA production request after its initial production failed to include any of the assessments actually performed for that most recent termination and closure of Plaintiff's LTD benefit;

(c)     December 15, 2020 correspondence from an examining physician Board-certified in Occupational Medicine providing an addendum to the September 29, 2020 Responses above addressing matters raised in Cigna's November 17, 2020 Supplemental Response to Ms. Ake's ERISA production request;

(d)     Updated treatment records and medical information from Ms. Ake's healthcare providers; and

(e)     An independently performed vocational evaluation.

59.     The certified mailing receipt returned by the U.S. Postal Service for this certified mailing confirms Cigna signed for the mailed version of Plaintiff's January 29, 2021 appeal on February 2, 2021.

60.     In a letter dated February 1, 2021, Cigna confirmed its receipt of the faxed version of Plaintiff's appeal.

61.     Eleven days later, in a letter dated February 12, 2021, Cigna informed that it sought "an extension of up to 45 days" to decide the appeal, stating as its only reason for doing so was because it "must consult a healthcare professional with the appropriate training and experience in the specialty involved in the medical judgment," and that it had requested "an external medical review."

62.     In a letter dated March 12, 2021, Cigna informed that it had completed its review and it had been concluded "that an adverse benefit decision" was

"warranted" on Ms. Ake's appeal.

63.    Nevertheless, the letter indicated it was being sent to allow Ms. Ake "an opportunity to respond to new evidence and/or rationalizes [Cigna] considered, relied on, or generated in reaching [its] appeal decision" before it "issue[d its] determination."

64.    Cigna's March 12, 2021 letter attached a clinical records review from insurance-industry vendor MES Peer Review Services dated March 3, 2021 and a Cigna-performed "Transferrable Skills Analysis" dated March 5, 2021 based on that records review.

65.    In other words, Cigna held these materials for at least a full week before providing them to the Plaintiff on the eve of its 45th day (measured from January 29, 2021 as the date it received the appeal) for issuing its decision.

66.    The clinical review from MES listed the many records and items that its reviewing physician considered and was sent, and none of the items that had been sent with Plaintiff's appeal were included.

67.    Specifically, Cigna had engineered a clinical review that excluded the same information that its original claims team refused to await receipt of and consider after its own nurse consultant found it important enough to request.

68.    On March 18, 2021, Plaintiff informed Cigna that no more abuses of the claim process and the rules that govern it, including those relating to timeliness

of claims decisions, would be tolerated given the history of Plaintiff's claim administration and informed that the claim was deemed denied and exhausted pursuant to Eleventh Circuit authority.

69.   As of the date of this filing, no final decision has yet been received.

70.   To the extent Cigna may contend that its March 12, 2021 letter constitutes a claim decision notwithstanding its indication to the contrary, that "decision" was issued without permitting Plaintiff a sufficient opportunity before the 45-day mark to respond to new evidence.

71.   Cigna's breaches and errors in the administration of this claim include the following:

(a)   The unlawful targeting of Plaintiff's claim for denial because ERISA governs;

(b)   The failure by CIGNA to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(c)   The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of her claim;

(d)   Taking an adversarial posture against Plaintiff instead of a

fiduciary posture by searching for ways to avoid paying part or all of her claim;

(e)   Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information at all levels of the claim process, including in its October 1, 2020 termination and in its solicitation of its clinical review from MES on Plaintiff's appeal;

(f)   Failing to accord any weight to Plaintiff's medical providers who personally examined the Plaintiff on a regular basis;

(g)   Failing to adhere to the terms of the Plan, such as those governing the review of adverse benefit determinations and especially when a decision must be made;

(h)   Purposefully limiting and curtailing the review of its medical consultants (including through sanitization of the records for their review) and otherwise improperly exerting influence on them to opine against payment of benefits;

(i)   Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff or allowing any of them the opportunity to "peer review" CIGNA's medical consultants (essentially conducting a one-way medical review process); and

(j)     Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how her conditions impacted one another.

72.     Accordingly, for these reasons and in light of the repeated abuses of Plan administrative rules and Department of Labor regulations, Cigna's continued denial of Plaintiff's claim is subject to a *de novo* review standard.

73.     Despite Plaintiff's established disability and entitlement to coverage under the terms of the Plan, CIGNA determined that Plaintiff was not "disabled" and that she no longer qualified for benefits and then later denied Plaintiff's appeal by operation of law.

74.     Plaintiff's medical evidence, especially that which Cigna outright refused even to consider superficially at two different claim levels, show Plaintiff to be incapable of working fulltime in any capacity, even sedentary.

75.     Plaintiff's records show she underwent an LF-S1 fusion in March 2018.

76.     During the recovery period for that surgery which originally caused Plaintiff to be unable to continue working, Plaintiff, according to Dr. Seymour's records, sustained a fall shortly before her June 14, 2018 appointment.

77.     At that time, Plaintiff reported "a pretty significant amount of pain" and demonstrated an exacerbation of back and bilateral leg pain.  Dr. Seymour found physical therapy to be needed, but Plaintiff was unable to do the therapy because of cost and because of a lack of insurance.

78.    Plaintiff reported continued pain and a "pop" after the fall.

79.    An x-ray revealed "mild enhancements around the facet joints above her fusion" and a "possible compression around T12."

80.    Dr. Seymour's office continued to monitor her condition and delayed healing was noted and a subsidence of the graft at 4 and 5.

81.    Dr. Seymour was not optimistic about Plaintiff's ability to return to work following the surgery, nor did he believe the surgery would leave Plaintiff fully recovered from her back issues.  To this point, he wrote the following to Dr. Cooper, one of Plaintiff's attending physicians, on December 6, 2018:

> I discussed this with Amanda.  I am concerned about how well this has healed. She has had persistence of symptoms in her back and this has been significant for her.  She states that she has filed for disability and I certainly think that is reasonable as I do think her employability is somewhat diminished. She has had a two level fusion and I think the chance of her returning back to any type of physical labor position is quite small.   I discussed with her that from my
>
> [*** page break ***]
>
> standpoint I would assess whether this is consolidated completely with a CT scan and if indeed the 4-5 and 5-1 level is completely consolidated one could consider removing the hardware and that may be something that can help her.   She is frustrated with some of her notes evidently. She states that the insurance company is holding back some payments that are owed to her because in her initial postop note it says that she is doing well.   I discussed with her that the reason the note says that is because she was doing well from a postoperative standpoint. That is not to say that she is doing as well as one would be after the postoperative period subsided. I think she is having significant discomfort and limitation which is going to probably prevent her from being able to do the job that she has been able to do in the past.  I will see her back after the CT scan is obtained.

82.    Dr. Seymour also reported having observed arthritic changes in Plaintiff's back in a February 7, 2019 record.

83.    Indeed, a May 26, 2019 MRI documents several degenerative changes

16

in Plaintiff's lumber spine.

84.     Dr. Seymour's January 11, 2019 assessment provided to one Cigna's claims teams earlier in the process reported that Plaintiff could not be reasonably expected to sit or stand for more than 15 minutes at a time. Further, Plaintiff could not bend more than 20 degrees and was not to lift more than 10 lbs or push, pull or bend at all. [Id.]

85.     Dr. Cooper's assessment was entirely consistent with Dr. Seymour's. He reported, among other things, the following:

| | | Constantly: > 5.5 Hrs/Day > 2/3 of the Day | Frequently: 2.5 - 5.5 Hrs/Day 1/3 - 2/3 of the Day | Occasionally: 0 - 2.5 Hrs/Day 0 - 1/3 of the Day | Check if supported by clinical findings | Does Not Apply to Diagnosis |
|---|---|---|---|---|---|---|
| Sitting: | | | | ✓ | ✓ | |
| Standing: | | | | ✓ | ✓ | |
| Walking: | | | | ✓ | ✓ | |
| Reaching: | Overhead | | | ✓ | ✓ | |
| | Desk Level | | | ✓ | ✓ | |
| | Below Waist | | | Cannot | ✓ | |

86.     He further reported significantly impaired abilities to balance, stoop, kneel, crouch and crawl, and – like Dr. Seymour – a limitation against lifting or maneuvering weights greater than 10 lbs more than "occasionally" each day.

87.     Dr. Cooper verified that his assessments were supported by clinical findings for these things.

88.     In the independent medical examination subsequently performed at that time for Plaintiff's first appeal in her matter at the beginning of 2020 confirmed the

findings and assessments in the foregoing records from Plaintiff's providers.

89.    The sum of these assessments, even then, was that Plaintiff could not work even a sedentary job because her back condition alone prevents her from being able to sit for more than 15 or 30 minutes at a time.

90.    Plaintiff's updated records sent to Cigna with her January 29, 2021 appeal which it ignored show no improvement whatsoever. Instead, they show a further decline.

91.    Moreover, the responses to the nurse case manager's questions in September 2020 before Cigna slammed the door shut by terminating the claim without waiting for responses was clear on this point; her questions and the relevant responses from the responding physician were as follows:

(1)    Has any recent surgery been performed?

No.  **Previous failed back = poor operative risk, COVID, patient anesthesia risks**

(2)    Patient's ability to return to work at this time:

It continues to be my professional opinion to a reasonable degree of medical certainty and medical probability that this patient cannot return to work.  In determining a person's ability to work full-time all aspects of their medical conditions must be accounted for.  Based on my most recent examination of Ms. Ake, I find there continues to be significant objective medical evidence supporting this patient's complaints and symptoms that preclude her from working in any fulltime capacity at any physical demand level.  Ms. Ake remains incapable of returning to any other fulltime occupation as I concluded in my **1/17/2020** report for this patient.

(3)    Whether the patient, if able to return to work, has any work restrictions?

Not applicable. This patient is not able to return to work.

(4)    If there are work restrictions, what is the clinical support for these restrictions?

The manner of restrictions applicable to this patient preclude her from working in any fulltime capacity.  This patient is not able to return to work with restrictions.  The restrictions she has that prevent her from returning to work (assuming this is what this question is asking) are clinically supported.   It is patently obvious to even the casual observer that this woman is scarcely able to maneuver around her house requiring assistance for even the most minimal tasks. It is an absurd proposition that she could maintain any form of full-time gainful employment.

92.    The independent vocational review Plaintiff provided with her January 29, 2021 appeal confirms that based on the functional limitations documented in Plaintiff's claim record she is entirely disabled from returning to work in any capacity in the national economy.

93.    Against the backdrop of the medical, Cigna's sustained refusal to honor Plaintiff's claim is arbitrary, capricious and simply wrong.  This evidence is clear that Plaintiff cannot perform the material and substantial duties of any occupation fulltime, no matter the physical demand level.

94.     As set forth above in connection with Cigna's fiduciary breaches and outright disregard of relevant evidence, Cigna's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claim decision.

95.     This conflict of interest further calls into question the credibility of Cigna's claims personnel and reviewers.

96.     Cigna considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision, and to excuse the Plaintiff from further utilization of Cigna's claim process.

97.     Cigna did not provide Plaintiff with a meaningful opportunity for a full and fair review of her claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

98.     Cigna's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations. In fact, here there was no denial notice at all as to the final decision made on the appeal.

99.     Plaintiff has exhausted all Plan remedies even though Cigna's abject

failure to adhere to Plan terms or ERISA requirements and regulations did not require it.  As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amanda Ake respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant her the following relief:

a.    For an order awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy identified in this Complaint, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b.    For a judgment against Cigna awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c.    For an order requiring Cigna to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d.    Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams
(ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Amanda Ake
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL 36104

## REQUEST FOR SERVICE BY
## CERTIFIED MAIL

Please serve the defendant **Life Insurance Company of North America** by certified mail pursuant to Federal Rules of Civil Procedure 4(e)(1).

M. Clayborn Williams
(ASB-9101-A43M)
The Martin Law Group, LLC
Attorney for Plaintiff
P.O. Box 20087
Tuscaloosa, AL 35402-0087
Phone (205) 343-1771
Facsimile (205) 343-1781
david@erisacase.com